**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| Timothy Alexander, individually and on behalf of all others similarly situated, | 1:22-cv-00648 |
| Plaintiff, | |
| - against - | Class Action Complaint |
| BlueTriton Brands, Inc., | |
| Defendant | Jury Trial Demanded |

Plaintiff alleges upon information and belief, except for allegations pertaining to Plaintiff, which are based on personal knowledge:

1.     BlueTriton Brands, Inc. ("Defendant") manufactures, labels, markets, and sells sparkling water purporting to be made with a "Twist of Lemon" under the Poland Spring brand (the "Product").

2.     The representation as "Sparkling Poland Spring With A Twist of Lemon" is false, deceptive and misleading because the Product lacks the amount and type of lemon ingredients expected by Plaintiff and consumers.

3.     In the last five years, sparkling water sales have increased over 40 percent, with Americans consuming 170 million gallons each year.

4.     Defendant markets the Product to the many consumers, like Plaintiff, who have cut back on carbonated soft drinks ("CSD") and fruit juices, due to growing awareness of the adverse health effects of these sugary beverages.

5.     Increasingly, consumers are turning to sparkling water with small amounts of added fruit ingredients, which is less "plain" than water, but avoids  the added sugars and calories in soda and juice.

6.     Sparkling waters with real fruit ingredients are available to consumers from companies like Spindrift (left), which compete with the Product (right).



7.     The Product's representations include "With a Twist of Lemon" and three rounds (slices) of fresh lemon.




2

8. Consumers prefer foods which get their taste from food ingredients, which have nutritive value, instead of added flavoring, because the former are more natural, less processed and not exposed to additives and solvents used in manufacturing flavoring substances.

9. Consumers expect the Product has a non-de minimis amount of lemon ingredients, based on the pictures of this fruit and promises it is made "With a Twist of Lemon."

10. A "twist of lemon" refers to the literal "twisting" of the outer portion of a lemon round.



11. This part of the lemon includes a small amount of flesh, pith, and peel (or rind).

12. The typical size of a lemon twist is six inches.

13. This strip of lemon is added to beverages by literally "twisting" it, which causes the juices and natural oils to be expressed, hence the phrase, "twist of lemon."

14. The amount of lemon ingredients which are added to a beverage described as having a "twist of lemon" has been estimated at approximately 0.1 mL

15. Lemon ingredients are considered "food" because they are a source of nutritive value.

16. The extractives, oils, and essences from lemons are concentrated, compounded,

3

synthesized, and mixed with solvents and additives, to create lemon flavor, which lacks the nutritive value of lemons. See 21 C.F.R. § 101.22(a)(3).

17.     Consumers expect the Product to contain the equivalent of a "twist of lemon" because that is what the label states.

18.     The packaging and labeling are misleading because it gives consumers the impression the Product contains a greater amount of lemon ingredients than it does.

19.     The Product does not contain an appreciable amount of lemon, as consumers understand this citrus fruit, revealed by the ingredient list, which lists "SPRING WATER, CO2, [and] NATURAL FLAVORS."



**INGREDIENTS:** SPRING WATER, CO2, NATURAL FLAVORS.

20.     Even if consumers turn the Product around, they will be confronted with a wall of text, containing almost one hundred words, in identical font, overwhelming the reader.

21.    According to flavor expert Bob Holmes, if the Product provided "all the flavor depth" and benefits of a "Twist of Lemon," the ingredients listed would include lemon oil, lemon extract or lemon juice, instead of "Natural Flavors."

22.    "Natural Flavors" fails to tell consumers that the Product's taste is not mostly from lemons, but a mix of essences from a variety of fruits and vegetables that are combined in a laboratory, with additives and solvents, into highly concentrated formulas.

23.    The front label attempts a "disclaimer" far off to the lower right corner, which states, "NATURALLY FLAVORED SPRING WATER WITH OTHER NATURAL FLAVORS AND CO2."



24.    Even if consumers noticed this small print disclosure after seeing the other representations, they would not know this meant the Product did not contain an appreciable amount of lemon ingredients.

25.    The phrase, "NATURALLY FLAVORED [SPRING WATER] WITH OTHER NATURAL FLAVORS [AND CO2]" is used so extensively on labeling that it has become the equivalent of a labeling tic, affixed to a majority of products with added flavoring.[1]

26.    While this phrase is similar to what the relevant regulations require, it does not clarify the misrepresentation that the Product contains a "Twist of Lemon."

---

[1] 21 C.F.R. § 101.22(i)(1)(iii).

27.   Lemons get their flavor from alcohols, aldehydes, esters, ethers, terpenes, hydrocarbons, and ketones.

28.   These compounds include beta-pinene, beta-myrcene and γ-terpinene, which provide the "woody" and "piney" notes of real lemons, and their characteristic sour taste, complemented by sweetness and tartness.

29.   The Product's taste, via the "Natural Flavors," is mainly from added limonene and citral, through the isomers neral and geranial, without the variety and relative amounts of other essential lemon compounds.

30.   These flavoring compounds used are cheaper than using only real lemons, and more concentrated, so a smaller amount can be used.

31.   This was or would be confirmed by lab testing which observed or would observe an absence of the spectrum of lemon flavor compounds.

32.   The relative absence of these essential lemon compounds also reveals or would reveal the use of a *de minimis* amount of real lemons, because if the Product contained more lemon ingredients, the levels of these compounds would be higher.

33.   Consumers also value lemons for their nutritive purposes.

34.   Lemons are high in vitamin C, a primary antioxidant which protects cells from damaging free radicals.

35.   Another group of antioxidants, polyphenols, are linked with reductions in blood pressure, hypertension, and protections from osteoporosis.

36.   Even if Plaintiff scrutinized all elements of the packaging and labeling, it would not cure the misrepresentations.

37.   Given that the Product is sold under the esteemed San Pellegrino brand, and imported

6

from Italy, Plaintiff had no reason to expect the Product lacked the relative amount and type of lemon ingredients.

38.     Sparkling water which contains lemon *ingredients* is not a rare or pricy delicacy such that a reasonable consumer would verify the front label statements by scrutinizing the ingredients or fine print.

39.     Whether a product contains real lemons or only tastes like lemon is basic front label information consumers rely on when making quick decisions at the store.

40.     Defendant did not have to name the Product "Sparkling Poland Spring With A Twist of Lemon," but chose to, since this is more enticing to consumers.

41.     The Product contains and makes other representations and omissions which are false or misleading.

42.     Reasonable consumers must and do rely on a company to honestly identify and describe the components, attributes, and features of a product, relative to itself and other comparable products or alternatives.

43.     The value of the Product that Plaintiff purchased was materially less than its value as represented by Defendant.

44.     Defendant sold more of the Product and at higher prices than it would have in the absence of this misconduct, resulting in additional profits at the expense of consumers.

45.     Had Plaintiff and proposed class members known the truth, they would not have bought the Product or would have paid less for it.

46.     As a result of the false and misleading representations, the Product is sold at a premium price, approximately no less than no less than $2.19 for 16.9 OZ, excluding tax and sales, higher than similar products, such as Spindrift, which, when compared on a per ounce basis, costs

$1.99 for 16.9 OZ, and other similar products represented in a non-misleading way, and higher than it would be sold for absent the misleading representations and omissions.

Jurisdiction and Venue

47.    Jurisdiction is proper pursuant to Class Action Fairness Act of 2005 ("CAFA"). 28 U.S.C. § 1332(d)(2).

48.    The aggregate amount in controversy exceeds $5 million, including any statutory damages, exclusive of interest and costs.

49.    Plaintiff Timothy Alexander is a citizen of Illinois.

50.    Defendant BlueTriton Brands, Inc., is a Delaware corporation with a principal place of business in Stamford, Fairfield County, Connecticut

51.    Plaintiff and Defendant are citizens of different states.

52.    The Product is available to consumers from third-parties, which includes grocery stores, dollar stores, warehouse club stores, drug stores, convenience stores, big box stores, and online.

53.    Venue is in the Eastern Division in this District because a substantial part of the events or omissions giving rise to these claims occurred in Lake County, i.e., Plaintiff's purchase, consumption, and/or use of the Product and awareness and/or experiences of and with the issues described here.

Parties

54.    Plaintiff Timothy Alexander is a citizen of Highwood, Lake County, Illinois.

55.    Defendant BlueTriton Brands, Inc. is a Delaware corporation with a principal place of business in Stamford, Connecticut, Fairfield County.

56.    Defendant is the successor to Nestlé Waters North America, the owner of bottled

water brands for over a hundred years.

57.    Defendant recognizes the value consumers place on "spring water – surfacing from underground, where it was purified by sand and rocks, to meet the light of day – [w]as the cleanest source [of water]."

58.    Defendant was prescient that "bottled water would become even more popular as an alternative to traditional drinks."

59.    Defendant describes the Poland Spring brand as "first bottled in Maine in 1845," and "steeped in a heritage of quality water, consumer trust and historic places," and as "really mean[ing] something to people."

60.    Defendant's bottled water brands "changed what people chose to drink and started a bottled water culture, appealing to active, health-minded individuals."

61.    The Product is available to consumers from third-parties, which includes grocery stores, dollar stores, warehouse club stores, drug stores, convenience stores, big box stores, and online.

62.    Plaintiff purchased the Product on one or more occasions within the statutes of limitations for each cause of action alleged, at CVS, at locations including 2000 Skokie Valley Rd Highland Park IL 60035-1729 between October 2021 and December 2021, among other times.

63.    Plaintiff believed the Product contained a non-negligible amount of lemon ingredients, instead of a de minimis or negligible amount, such as isolated lemon compounds, which failed to provide the nutritive value and taste of lemons.

64.    Plaintiff bought the Product because he expected it contained a non-negligible amount of lemon ingredients, instead of a de minimis or negligible amount, such as isolated lemon compounds, which failed to provide the nutritive value and taste of lemons because that is what

9

the representations said and implied.

65.    Plaintiff relied on the words, layout, packaging, and/or images on the Product, on the labeling, statements, omissions, and/or claims made by Defendant in digital, print and/or social media, which accompanied the Product and separately, through in-store, digital, audio, and print marketing.

66.    Plaintiff did not expect a product, especially from the Poland Spring brand, would promise to be made with a "Twist of Lemon" when it contained a negligible amount of lemon, not equivalent in any way to a "twist."

67.    Plaintiff was aware of competitor products promoted as being made with lemon ingredients, which contained those ingredients, instead of isolated compounds that may have originated in those ingredients, and this factor affected Plaintiff's purchase decision.

68.    Plaintiff was disappointed because he believed the Product contained a non-negligible amount of lemon ingredients, instead of a de minimis or negligible amount, such as isolated lemon compounds, which failed to provide the nutritive value and taste of lemons.

69.    Plaintiff bought the Product at or exceeding the above-referenced price.

70.    Plaintiff would not have purchased the Product if he knew the representations and omissions were false and misleading or would have paid less for it.

71.    Plaintiff chose between Defendant's Product and products represented similarly, but which did not misrepresent their attributes, features, and/or components.

72.    The Product was worth less than what Plaintiff paid and he would not have paid as much absent Defendant's false and misleading statements and omissions.

73.    Plaintiff intends to, seeks to, and will purchase the Product again when he can do so with the assurance the Product's representations are consistent with its abilities, attributes, and/or

composition.

74.     Plaintiff is unable to rely on the labeling and representations not only of this Product, but for other similar sparkling water with added fruit ingredients, because he is unsure whether those representations are truthful.

Class Allegations

75.     Plaintiff seeks certification under Fed. R. Civ. P. 23 of the following classes:

> **Illinois Class:** All persons in the State of Illinois who purchased the Product during the statutes of limitations for each cause of action alleged; and

> **Consumer Fraud Multi-State Class**: All persons in the States of Iowa, Arizona, Ohio, Alabama, Louisiana, West Virginia, Michigan, Texas, Arkansas, Virginia and Oklahoma, who purchased the Product during the statutes of limitations for each cause of action alleged.

76.     Common questions of issues, law, and fact predominate and include whether Defendant's representations were and are misleading and if Plaintiff and class members are entitled to damages.

77.     Plaintiff's claims and basis for relief are typical to other members because all were subjected to the same unfair and deceptive representations and actions.

78.     Plaintiff is an adequate representative because his interests do not conflict with other members.

79.     No individual inquiry is necessary since the focus is only on Defendant's practices and the class is definable and ascertainable.

80.     Individual actions would risk inconsistent results, be repetitive and are impractical to justify, as the claims are modest relative to the scope of the harm.

81.     Plaintiff's counsel is competent and experienced in complex class action litigation

and intends to protect class members' interests adequately and fairly.

82.    Plaintiff seeks class-wide injunctive relief because the practices continue.

Illinois Consumer Fraud and Deceptive Business Practices Act
("ICFA"), 815 ILCS 505/1, et seq.

(Consumer Protection Statute)

83.    Plaintiff incorporates by reference all preceding paragraphs.

84.    Plaintiff and class members desired to purchase a product that contained a non-negligible amount of lemon ingredients, instead of a de minimis or negligible amount, such as isolated lemon compounds, which failed to provide the nutritive value and taste of lemons.

85.    Defendant's false and deceptive representations and omissions are material in that they are likely to influence consumer purchasing decisions.

86.    Defendant misrepresented the Product through statements, omissions, ambiguities, half-truths and/or actions.

87.    Plaintiff relied on the representations that the Product contained a non-negligible amount of lemon ingredients, instead of a de minimis or negligible amount, such as isolated lemon compounds, which failed to provide the nutritive value and taste of lemons.

88.    Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

Violation of State Consumer Fraud Acts

(On Behalf of the Consumer Fraud Multi-State Class)

89.    The Consumer Fraud Acts of the States in the Consumer Fraud Multi-State Class are similar to the above-referenced consumer protection statute and prohibit the use of unfair or deceptive business practices in the conduct of trade or commerce.

90.     Defendant intended that each of members of the Consumer Fraud Multi-State Class would rely upon its deceptive conduct, and a reasonable person would in fact be misled by this deceptive conduct.

91.     As a result of Defendant's use or employment of artifice, unfair or deceptive acts or business practices, each of the other members of the Consumer Fraud Multi-State Class have sustained damages in an amount to be proven at trial.

92.     In addition, Defendant's conduct showed motive, and the reckless disregard of the truth such that an award of punitive damages is appropriate.

Breach of Contract

93.     Plaintiff entered into a contract with Defendant for purchase of the Product.

94.     The terms of the contract provided that the Product contained a non-negligible amount of lemon ingredients, instead of a de minimis or negligible amount, such as isolated lemon compounds, which failed to provide the nutritive value and taste of lemons.

95.     Defendant breached the contract because the Product did not meet the terms Plaintiff agreed to.

96.     Plaintiff was damaged by the breach, and those damages include the purchase price.

Breaches of Express Warranty,<br/>Implied Warranty of Merchantability/Fitness for a Particular Purpose and<br/>Magnuson Moss Warranty Act, 15 U.S.C. §§ 2301, <em>et seq</em>.

97.     The Product was manufactured, identified, and sold by Defendant and expressly and impliedly warranted to Plaintiff and class members that it contained a non-negligible amount of lemon ingredients, instead of a de minimis or negligible amount, such as isolated lemon compounds, which failed to provide the nutritive value and taste of lemons.

98.     Defendant directly marketed the Product to Plaintiff and consumers through its

advertisements and marketing, through various forms of media, on the packaging, in print circulars, direct mail, and targeted digital advertising.

99.    Defendant knew the product attributes that potential customers like Plaintiff were seeking and developed its marketing and labeling to directly meet those needs and desires.

100.    Defendant's representations about the Product were conveyed in writing and promised it would be defect-free, and Plaintiff understood this meant the Product contained a non-negligible amount of lemon ingredients, instead of a de minimis or negligible amount, such as isolated lemon compounds, which failed to provide the nutritive value and taste of lemons.

101.    Defendant's representations affirmed and promised that the Product contained a non-negligible amount of lemon ingredients, instead of a de minimis or negligible amount, such as isolated lemon compounds, which failed to provide the nutritive value and taste of lemons.

102.    Defendant described the Product as one which contained a non-negligible amount of lemon ingredients, instead of a de minimis or negligible amount, such as isolated lemon compounds, which failed to provide the nutritive value and taste of lemons, which became part of the basis of the bargain that the Product would conform to its affirmations and promises.

103.    Defendant had a duty to disclose and/or provide non-deceptive descriptions and marketing of the Product.

104.    This duty is based on Defendant's outsized role in the market for this type of Product, the owner of the most trusted and ubiquitous brand of bottled water in the nation, Poland Spring, with a reputation for uncompromising purity and market leader.

105.    Plaintiff recently became aware of Defendant's breach of the Product's warranties.

106.    Plaintiff provided or will provide notice to Defendant, its agents, representatives, retailers, and their employees.

107.  Plaintiff hereby provides notice to Defendant that it has breached the express and implied warranties associated with the Product.

108.  Defendant received notice and should have been aware of these issues due to complaints by third-parties, including regulators, competitors, and consumers, to its main offices, and by consumers through online forums.

109.  The Product did not conform to its affirmations of fact and promises due to Defendant's actions.

110.  The Product was not merchantable because it was not fit to pass in the trade as advertised, not fit for the ordinary purpose for which it was intended and did not conform to the promises or affirmations of fact made on the packaging, container or label.

111.  The Product was not merchantable because Defendant had reason to know the particular purpose for which the Product was bought by Plaintiff, because he expected it contained a non-negligible amount of lemon ingredients, instead of a de minimis or negligible amount, such as isolated lemon compounds, which failed to provide the nutritive value and taste of lemons, and he relied on Defendant's skill and judgment to select or furnish such a suitable product.

112.  Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

<u>Negligent Misrepresentation</u>

113.  Defendant had a duty to truthfully represent the Product, which it breached.

114.  This duty was non-delegable, and based on Defendant's position, holding itself out as having special knowledge and experience in this area, the owner of the most trusted and ubiquitous brand of bottled water in the nation, Poland Spring, with a reputation for uncompromising purity.

115.  Defendant's representations regarding the Product went beyond the specific representations on the packaging, as they incorporated its extra-labeling promises and commitments to quality, transparency and putting customers first.

116.  These promises were outside of the standard representations that other companies may make in a standard arms-length, retail context.

117.  The representations took advantage of consumers' cognitive shortcuts made at the point-of-sale and their trust in Defendant.

118.  Plaintiff and class members reasonably and justifiably relied on these negligent misrepresentations and omissions, which served to induce and did induce, their purchase of the Product.

119.  Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

<u>Fraud</u>

120.  Defendant misrepresented and/or omitted the attributes and qualities of the Product, that it contained a non-negligible amount of lemon ingredients, instead of a de minimis or negligible amount, such as isolated lemon compounds, which failed to provide the nutritive value and taste of lemons.

121.  Moreover, the records Defendant is required to maintain, and/or the information inconspicuously disclosed to consumers, provided it with actual and constructive knowledge of the falsity, through statement and omission, of the representations.

122.  Defendant knew of the issues described here yet did not address them.

123.  Defendant's fraudulent intent is evinced by its knowledge that the Product was not consistent with its representations.

<u>Unjust Enrichment</u>

124.   Defendant obtained benefits and monies because the Product was not as represented and expected, to the detriment and impoverishment of Plaintiff and class members, who seek restitution and disgorgement of inequitably obtained profits.

<u>Jury Demand and Prayer for Relief</u>

Plaintiff demands a jury trial on all issues.

 **WHEREFORE**, Plaintiff prays for judgment:

1.  Declaring this a proper class action, certifying Plaintiff as representative and the undersigned as counsel for the class;

2.  Entering preliminary and permanent injunctive relief by directing Defendant to correct the challenged practices to comply with the law;

3.  Injunctive relief to remove, correct and/or refrain from the challenged practices and representations, and restitution and disgorgement for members of the class pursuant to the applicable laws;

4.  Awarding monetary damages, statutory and/or punitive damages pursuant to any statutory claims and interest pursuant to the common law and other statutory claims;

5.  Awarding costs and expenses, including reasonable fees for Plaintiff's attorneys and experts; and

6.  Other and further relief as the Court deems just and proper.

Dated:   February 4, 2022

Respectfully submitted,

Sheehan & Associates, P.C.
/s/Spencer Sheehan
60 Cuttermill Rd Ste 409
Great Neck NY 11021
Tel: (516) 268-7080
spencer@spencersheehan.com